**Augusta CLARK, Plaintiff-Appellant,**

**Employers National Insurance Company, Intervenor,**

v.

**BOTHELHO SHIPPING CORP. and Fairmont Shipping (HK) Ltd., Defendants-Appellees.**

No. 85–7118.

United States Court of Appeals, Eleventh Circuit.

March 26, 1986.

Ross Diamond, III, Mobile, Ala., for plaintiff-appellant.

Sidney H. Schell, Mobile, Ala., for defendants-appellees.

Before KRAVITCH and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.

HATCHETT, Circuit Judge:

Appellant seeks to recover damages for personal injury sustained while working as a longshoreman onboard the M/V Star Mindanao, a cargo vessel operated by Bothelho Shipping Corporation. We affirm the order of the district court which entered judgment on a directed verdict for Bothelho.

## FACTS

Augusta Clark, the appellant, a longshoreman employed by Ryan-Walsh Stevedoring Company, alleged that he was injured when he slipped in a puddle of grease on the deck of the M/V Star Mindanao, a ship owned by New Minco Maritime S.A. and operated by Bothelho Shipping Corporation (Bothelho).

The M/V Star Mindanao came to the port of Mobile, Alabama, on the morning of November 2, 1982, and stevedoring work began at 1 p.m. on that date. The vessel contracted Ryan-Walsh to load bales of wood pulp into the ship. Clark was hired to work in the gang that loaded cargo into the number one hatch, at the forward end of the vessel. He was assigned the job of gangwayman. The gangwayman works on the main deck of the vessel giving signals to and from the crane operator, the hook-up men on the dock, and the men working in the vessel's hatch.

Clark claims that he was walking across the main deck toward the hatch opening when he slipped in the grease spot, fell, and sustained severe injury to his left knee. According to Clark, the grease spot was located on the main deck, several feet forward of the number one hatch coaming, and several feet inboard from the gantry crane track; it was approximately six to eight inches in diameter and about the same color as the deck. No one else saw the grease spot before or after Clark's fall. Clark says he put a piece of plywood over the grease spot after his fall. Although Clark testified that he saw the ship's crewmen walking to and from a storage locker forward of the number one hatch carrying buckets before the accident, no one knows how the grease got onto the ship's deck or the exact time that the hazard appeared.

Clark never reported an unsafe condition to the ship's personnel; however, on May 10, 1983, he brought this action under Longshoremen and Harbor Workers Compensation Act (LHWCA), 33 U.S.C. § 905(b).[1] The district court granted Bothelho's motion for directed verdict because, in its view, it would have been "sheer speculation on the part of the jury to affix liability...."

## DISCUSSION

Prior to 1972, a longshoreman injured in the course of his employment could receive compensation payment from his employer, the stevedore, or bring an action against the owner of the vessel and recover if he could prove that the owner's negligence

---

1. Section 905(b) provides in pertinent part:
   In the event of injury to a person covered under the chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provision of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.... The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

caused his injuries or that the vessel was unseaworthy. No showing of fault on the part of the owner was necessary to support the unseaworthiness claim. (The shipowner could be held liable for the longshoreman's injuries even if the stevedore created the unsafe condition.) *See generally Scindia Steam Navigations Company v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981).

In 1972, Congress amended the LHWCA to shield shipowners from strict liability for injuries suffered during loading activities. The amended legislation provided for liability against the owner only in the event of the owner's negligence or the negligence of the vessel's crew. *See* n. 1 *supra.*

Although it is clear that the amendments impose a negligence standard rather than a standard of liability without fault, the specifics of that standard were left to be "resolved through the application of acceptable principles of tort law and the ordinary process of litigation." S.Rep. No. 92–1125, 92d Cong., 2d Sess. 11 (1972); H.R.Rep. No. 92–1441, 92d Cong.2d Sess. 7 (1972), *reprinted in* 1972 U.S.Code Cong. & Ad. News 4698.

■ In *Scindia,* the Supreme Court outlined the duty shipowners owe longshoremen under the 1972 amendments to the LHWCA. At the outset of cargo operations, the ship owner's duty

> extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property, and to warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care....

*Scindia,* 451 U.S. at 167, 101 S.Ct. at 1622, 68 L.Ed.2d at 12. Once the stevedore's cargo operations have begun, however, absent contract provision, positive law, or custom to the contrary, the shipowner has no duty by way of supervision or inspection to discover dangerous conditions that develop within the confines of the operations. "The necessary consequence is that the shipowner is not liable to the longshoremen for injuries caused by dangers unknown to the owner and about which he had no duty to inform himself." *Scindia,* 451 U.S. at 167, 101 S.Ct. at 1622, 68 L.Ed.2d at 15.

■ If, however, during stevedoring operations, the shipowner becomes aware that the ship or its gear poses a danger to the longshoremen and that the stevedore is failing, unreasonably, to protect the longshoreman, then the shipowner has a duty to intervene and protect the longshoremen. *Scindia,* 451 U.S. at 175–76, 101 S.Ct. at 1626–27, 68 L.Ed.2d at 17, 18.

The district court found that the grease spill occurred sometime after stevedoring operations began and granted Bothelho's motion for directed verdict because the evidence was insufficient to establish where the spill came from. The correctness of this ruling is the subject of this appeal.

Clark contends that the district court failed to correctly construe shipowners' duties under *Scindia:* "In the mind of the District Court, for all practical purposes the duties of the shipowner end at the moment of the beginning of stevedoring operations, regardless of the facts in the case." In Clark's view, Bothelho's motion for directed verdict should not have been granted because a jury could have found that the oil spill existed prior to stevedoring operations.

Bothelho contends that the district court was correct in granting its motion for directed verdict because the grease spot constituted an "open, obvious, non-excessively hazardous situation."

On a motion for directed verdict, all of the evidence must be considered in the light most favorable to the party opposing the motion. If the facts and inferences

**1566**

point so strongly and overwhelmingly in favor of one party that reasonable persons could not reach a contrary verdict, the motion should be granted. *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969).

■ The district court found that the grease spot appeared sometime after stevedoring operations began. Steve Donnelly, the stevedoring superintendent, testified that he inspected the vessel's deck before stevedoring operations began and did not see a grease spot. Moreover, Clark and crew members walked about the area in which the grease spot appeared before the commencement of stevedoring operations. No evidence existed to indicate that the grease spot was on the deck before stevedoring operations began.

Under *Scindia,* once stevedoring operations began, Bothelho had no duty to discover the dangerous condition. *Scindia,* 451 U.S. at 171–72, 101 S.Ct. at 1624, 68 L.Ed.2d at 15; *Hunter v. Reardon Smith Lines, Ltd.,* 719 F.2d 1108, 1112 (11th Cir. 1983).

The only way Bothelho may be held liable for Clark's injuries is if Bothelho knew of the dangerous condition yet failed to protect Clark from it. *Scindia,* 451 U.S. at 175–76, 101 S.Ct. at 1626–27, 68 L.Ed.2d at 17, 18; *Hunter* at 1112.

The evidence was insufficient to support a finding that Bothelho knew of the grease spot. Clark was the only person to ever see the grease spot and no one presented persuasive evidence as to the source of the grease.

Under these circumstances, the district court was correct in granting Bothelho's motion for directed verdict. A shipowner is not liable to a longshoreman when his injury is caused "by a transitory condition of which [the shipowner] had no knowledge." *Moser v. Texas Trailer Corp.,* 694 F.2d 96, 98 (5th Cir.1982). Accordingly, the judgment of the district court is affirmed.

AFFIRMED.