Johnny LAMPKIN, Plaintiff-Appellant,

v.

LIBERIA ATHENE TRANSPORT CO., LTD., and Sanko Steamship Co., Ltd., Defendants-Appellees.

No. 86–3063.

United States Court of Appeals, Eleventh Circuit.

Aug. 7, 1987.

---

Edward F. Gerace, Tampa, Fla., for plaintiff-appellant.

Carl R. Nelson, Fowler, White, Gillen, Tampa, Fla., for defendants-appellees.

Before ANDERSON and CLARK, Circuit Judges, and SIMPSON *, Senior Circuit Judge.

CLARK, Circuit Judge:

Appellant Johnny Lampkin seeks to recover damages for personal injury sustained when he slipped and fell on a grease or oil spot while working as a longshoreman aboard the *M/V World Finance*, a cargo vessel owned by Liberia Athene Transport Co., Ltd., and chartered to Sanko Steamship Co., Ltd. We affirm the order of the district court granting appellees' motion for summary judgment.

## FACTS

Appellant Johnny Lampkin, a longshoreman employed by the stevedore Sel Maduro, Inc., alleged that he was injured when he slipped on a ramp of the *M/V World Finance*, a vessel owned by Liberia Athene Transport Co., Ltd. (LATCO) and operated by Sanko Steamship Co., Ltd. (Sanko). The *World Finance* arrived in Tampa, Florida from Asia early in the morning of April 10,

1979, and the discharging of its cargo of trucks and automobiles began at approximately 8:00 a.m. on that date. Lampkin contends that, at about 9:00 a.m., he slipped and fell on a grease or oil spot located on one of the ramps of the ship. The stevedore's ship foreman, Colen Thomas, noticed the spot shortly before Lampkin fell, and had been on his way to locate a crew member of the *World Finance* to clean it up when the accident occurred.

The parties disagree on the role of the ship's crew during cargo operations, and dispute whether the crew removed the lashing gear (that secured the vehicles during voyage) from the area where Lampkin fell. Lampkin claims that crew members of the *M/V World Finance* were in the cargo area during discharge operations for the purposes of protecting the cargo from damage, picking up the lashing gear after the vehicles were discharged, checking for safety hazards, and cleaning up any grease or oil spills that occurred prior to and during cargo operations. Most importantly, Lampkin contends that four to six vehicles and their lashings had been removed from the ramp where he fell prior to his fall.

However, appellees claim that neither the officers nor the crew members were actively involved in discharge operations. Appellees contend that once operations began, the role of the officers and crew was limited to observing the condition of the vessel and the cargo, and picking up and storing the lashing equipment for future use. Contrary to Lampkin's contention, appellees claim that the crew had not entered the area where he fell between the time the trucks were discharged from that ramp and the time of the accident.

Lampkin brought suit against LATCO and Sanko in the Circuit Court for Hillsborough County, Florida for negligently causing him to sustain personal injury. Appellees removed the suit to federal court on diversity grounds. The district court granted appellees' second motion for summary judgment pursuant to *Scindia Steam*

---

* Judge Simpson did not participate in the decision in this case and the decision is by quorum.

28 U.S.C. § 46; 11th Circuit Rule 34–2.

*Navigation Co. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), on the ground that, in the absence of reasonable notice to the crew or an opportunity after notice for the crew to clean up the spill, the shipowner was not negligent.

## DISCUSSION

We review independently the district court's order granting summary judgment to determine whether it used the correct legal standard and whether any genuine issue of material fact exists that should have dictated a different conclusion. Fed. R.Civ.P. 56(c); *Mercantile Bank and Trust Co., Ltd. v. Fidelity and Deposit Co.,* 750 F.2d 838, 841 (11th Cir.1985). The Supreme Court has recently shed additional light on the standard governing summary judgment motions. In *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the court stated that

the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Id.* at 2552–53.

A party seeking summary judgment bears the burden of demonstrating that no genuine dispute exists as to any material fact and that it is entitled to prevail as a matter of law, *see Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), or "that there is an absence of evidence to support the nonmoving party's case" in an action where it

bears the burden of proof. *Celotex,* 106 S.Ct. at 2554 (explicating standard set forth in *Adickes, supra* ). In determining whether the moving party has met its burden, we resolve credibility questions and draw permissible inferences in favor of the party opposing the motion. *Crockett v. UniRoyal, Inc.,* 772 F.2d 1524, 1528 (11th Cir.1985). Review of the district court's disposition of legal issues is, of course, *de novo. Id.* at 1529.

Lampkin contends that the district court erred in granting summary judgment for appellees because it both applied an improper legal standard and failed to resolve factual disputes in his favor. We agree with Lampkin that the district court failed to consider his contention that a shipowner's liability is measured by a different legal standard when the stevedore does not exercise exclusive control over the area of discharge operations. Thus, we review Lampkin's claims under two of the legal standards set forth in *Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). However, we conclude that Lampkin has failed to demonstrate the existence of a material factual dispute that would preclude summary judgment under either standard, or to make a showing sufficient to establish the existence of a central element of his case on which he would bear the burden of proof at trial.

*Scindia* involved a longshoreman injured while engaged in loading a cargo of wheat into the ship's hull. A winch, part of the ship's gear, was used to lower wooden pallets containing the sacks of wheat. The braking mechanism of the winch malfunctioned, and sacks of wheat fell and struck the longshoreman. The Supreme Court held that

absent contract provision, positive law, or custom to the contrary ... the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore. The necessary consequence is that the shipowner is not liable

to the longshoremen for injuries caused by changes unknown to the owner and about which he had no duty to inform himself.

451 U.S. at 172, 101 S.Ct. at 1624. Applying *Scindia* to the facts of this case, the district court held that appellees owed no duty to the appellant to detect and to clean up the spot. Although the court found that it was customary for the crew to clean up for the longshoremen once stevedoring activities began, the custom depended upon notification by the stevedore of the dangerous condition. The district court concluded that, without reasonable notice to the crew, or an opportunity for the crew to clean up the spill, the crew had no duty to remove the hazard. Thus, LATCO was not negligent and could not be held liable for Lampkin's injury under 33 U.S.C. § 905(b).[1]

■ Lampkin claims that the district court erroneously applied the standard established in *Scindia* that should properly be used to determine liability only when the shipowner has given the stevedore complete control over the cargo area. Lampkin properly interprets *Scindia* to mean that a shipowner actively engaged in cargo operations owes longshoremen a higher standard of care, which imposes liability for the failure to exercise due care to avoid injuries. On the basis of the crew's activities, which Lampkin contends included protecting the cargo from damage, picking up the lashing gear after the vehicles were discharged, checking for safety hazards, and cleaning up any grease or oil spills that occurred prior to and during cargo operations, Lampkin concludes that the shipowner retained sufficient control over the cargo area to invoke the higher standard of care. Lampkin argues that, at the very least, the

crew's activities raise a factual issue as to the degree of control exercised by each party. Moreover, Lampkin contends that summary judgment is also inappropriate because even if the shipowner and stevedore did not exercise concurrent control over the cargo area, he has demonstrated that a genuine issue of material fact exists regarding whether the crew had actual knowledge of the spill. In other words, Lampkin claims that the appellees had to prove a lack of knowledge of the spill on the ramp because the crew was present during discharge operations.

Appellees claim that there is no dispute as to the material facts surrounding the question of liability. According to appellees, the shipowner may be held liable for negligence only if it (1) failed to exercise reasonable care prior to the onset of cargo operations; (2) retained direct control of cargo operations once they began; or (3) had actual knowledge of any hazardous condition that developed during discharge operations. Appellees maintain that the shipowner had taken reasonable steps to ensure safety prior to the onset of cargo operations, and that the grease spot could not have been discovered prior to the unloading of the vehicles. Appellees also assert that there is no legitimate dispute as to whether the shipowner retained direct control of the cargo area because the crew's job was limited to observing the condition of the vessel and its cargo, and gathering up the lashing gear after the vehicles were removed by the longshoremen. Finally, appellees contend that they had neither actual knowledge of the condition nor knowledge that the stevedore would not remedy the situation. Thus, appellees conclude that there are no disputed issues of material fact, and that they are

---

1. 33 U.S.C. § 905(b), which concerns exclusive liability, provides:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary

shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of person engaged in providing stevedoring services to the vessel.... The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

entitled to summary judgment as a matter of law.

Appellees are correct in asserting that *Scindia* established three varying standards of care governing the relationship between the shipowner and the stevedore.[2] First, prior to the onset of cargo operations, the shipowner owes the stevedore and its longshoremen the duty of exercising due care "under the circumstances," which includes having the ship and its equipment in reasonably safe condition and warning the stevedore of hidden dangers that are, or should be, known through the exercise of reasonable care. *Scindia*, 451 U.S. at 168, 101 S.Ct. at 1622. Lampkin does not contend that appellees breached this duty. Second, once cargo operations are under way, the shipowner may be liable if it "actively involves itself in the cargo operations and negligently injures a longshoreman or if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation." *Id.* Third, also once cargo operations have commenced, and absent contractual, legal or customary provisions to the contrary, the shipowner has no duty "to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore." 451 U.S. at 173, 101 S.Ct. at 1624. *Scindia* made it clear that once an owner has relinquished complete control of the vessel to the stevedore, primary responsibility for the safety of the longshoremen lies with the stevedore. However, if the shipowner learns of an apparently dangerous condition that presents an unreasonable risk or harm to the longshoremen, it has a duty to intervene and remove the hazard. *Id.* Lampkin contends that summary judgment is inappropriate because he may prevail under either the second or third standard.

It is clear that appellees' liability depends upon whether cargo operations had begun, and whether the shipowner was actively involved in the operations. Where cargo operations have begun and the shipowner is not actively involved, it must have actual knowledge of the hazard before it may be held liable. In such a case, the shipowner has a duty to intervene to protect the longshoremen only if "it becomes aware that the ship or its gear poses a danger to the longshoremen and that the stevedore is failing, unreasonably, to protect the longshoremen...." *Clark v. Botelho Shipping Corp.*, 784 F.2d 1563, 1565 (11th Cir.1986). However, if cargo operations have commenced and the shipowner is actively involved in the operations, the shipowner may be held liable if it had constructive knowledge of the hazard. *See Scindia*, 451 U.S. at 168, 101 S.Ct. at 1622; *see also Turner v. Costa Line Cargo Services, Inc.*, 744 F.2d 505, 508 (5th Cir.1984) (relieving shipowner of liability only if hazardous condition arises in area completely turned over to the stevedore). In *Turner*, the injured longshoreman's foreman had requested the shipowner to eliminate the hazardous condition, but such a request is not necessary. *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 535 (5th Cir.1986).

The distinction, between an area controlled by the stevedore and one that is concurrently controlled by the stevedore and the shipowner, is consistent with Congress' amendment of Section 5(b) of the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA") (certified at 33 U.S.C. § 905(b)) in 1972. *See generally Scindia*, 451 U.S. 156, 101 S.Ct. 1614. Prior to 1972, a longshoreman injured during employment could recover from his stevedore, or from the shipowner if he could prove that the owner's negligence caused his injuries or that the vessel was unseaworthy. In 1972, Congress amended the LHWCA to relieve shipowners from strict liability for injuries suffered during stevedoring activities. The amended legislation

---

**2.** *Scindia* dealt specifically with the malfunctioning of a ship's gear during cargo operations, but this court has applied these three standards to cases involving hazardous conditions on the decks and ramps of a vessel. *See, e.g., Clark v. Bothelho Shipping Corp.*, 784 F.2d 1563 (11th Cir.1986) (grease spot on deck).

provided for liability against the shipowner only in the event of negligence by the owner or the ship's crew. *Clark*, 784 F.2d at 1565. The legislative history reveals that the amendment was not intended to relieve the shipowner of responsibility to take remedial action where it knew or should have known about a dangerous condition. *See, e.g.,* S.Rep. No. 1125, 92d Cong., 2d Sess. 8–12 (1972); H.R.Rep. No. 1441, 92d Cong., 2d Sess. 4–8, *reprinted in* 1972 U.S.Code Cong. & Admin.News 4698, 4701–05. Both the Senate and House Reports used an example similar to the facts of this case to illustrate the principle.

> [W]here a longshoreman slips on an oil spill on a vessel's deck and is injured, the proposed amendments to Section 5 would still permit an action against the vessel for negligence. To recover he must establish that: 1) the vessel put the foreign substance on the deck, or knew that it was there, and willfully or negligently failed to remove it; or 2) the foreign substance had been on the deck for such a period of time that it should have been discovered and removed by the vessel in the exercise of reasonable care by the vessel under the circumstances. The vessel will not be chargeable with the negligence of the stevedore or employees of the stevedore.

S.Rep. No. 1125, 92d Cong., 2d Sess. 10–11; H.R.Rep. No. 1441, 92d Cong., 2d Sess. 6–7, *reprinted in* 1972 U.S.Code Cong. & Admin.News, 4698, 4704.

Establishing different standards of liability, contingent upon the degree of control exercised by the shipowner and the stevedore, is certainly desirable from a policy perspective. Otherwise, a shipowner would be free to ignore hazardous conditions that develop within areas under its exclusive or concurrent control, pending notification by the stevedore. Were we to adopt appellees' arguments, such would be the outcome. We reject this position as inconsistent with *Scindia*, the legislative history of the LHWCA, and policy considerations.

█] The district court assumed that the shipowner relinquished complete control of the cargo area to the stevedore and applied the third standard established in *Scindia*, which requires actual knowledge of the dangerous condition to impose liability. Without more information, we cannot determine whether the stevedore exercised complete control over the cargo area, or the shipowner assumed an active role in discharge operations and thus exercised concurrent control with the stevedore over the area. However, we need not reverse the grant of summary judgment to permit more discovery on this issue. Whether we accept Lampkin's contention that the crew played an active role in discharge operations, or accept the appellees' assertion that they relinquished complete control of the cargo area to the stevedore, the result is the same. Summary judgment in favor of the appellees is appropriate.

Assuming that the third standard controls, we agree with the district court that Lampkin failed to make a showing sufficient to establish that the vessel's crew had actual knowledge of the grease spot. We reach this conclusion after having examined carefully the entire record, including the depositions of Lampkin, Colen Thomas (the stevedore's ship foreman), Louis Anthony (head foreman of Lampkin's stevedore gang), Nathaniel Scott (member of Lampkin's gang), and Chae Suk Kyou (chief officer of the *M/V World Finance*). As Lampkin notes in his memorandum in opposition to defendants' motion for summary judgment, Mr. Thomas testified that the crew had not yet come down and picked up the lashing gear from the deck where Lampkin fell. Record, Vol. I, Tab 14 at 3. Mr. Thomas saw the grease spot and was on his way to notify the crew when Lampkin fell. Absent a showing of notification of the spill to the crew by the stevedore, or that the crew had actual knowledge of the hazardous condition, appellant has failed to meet the requirement of *Celotex Corp. v. Catrett*, 106 S.Ct. 2548.

We must also consider whether Lampkin could prevail under the second standard enunciated in *Scindia*, which requires merely constructive, and not actual, knowledge of the hazard. Even assuming that

the crew played an active role in discharge operations, we find no evidence that the crew had constructive knowledge of the particular hazard that caused Lampkin to fall. Although it is undisputed that the vehicles on the ramp where Lampkin fell had been discharged by the longshoremen, and that the grease spot was on the ramp, we find no support for Lampkin's contention that the crew also had been on the ramp because the lashing gear had been removed prior to his fall. On the contrary, we find no evidence that the crew had been on the particular ramp since removal of the vehicles, or any evidence that the lashing gear, which had secured the vehicles located on the ramp, had already been removed at the time of Lampkin's accident. Such an assertion is clearly contrary to the deposition testimony of Mr. Thomas, discussed above. Moreover, Lampkin did not testify at his deposition that the lashings had been removed, or submit any supplemental affidavits to this effect. Indeed, Lampkin testified twice that the crew members had not yet been down the ramp. Lampkin's Deposition at 11, 43. Lampkin also testified that, at most, seven or eight minutes had elapsed between removal of the last vehicle from the ramp and the time he fell. *Id.* at 14. Thus, even if the crew's duties to protect the cargo from damage, to pick up the lashing gear after the vehicles were discharged, to check for safety hazards, and to clean up any spills, could be construed as active involvement in discharge operations,[3] there is no evidence that the crew had been on the ramp and had had the opportunity to gain constructive knowledge of the grease spot. Thus, Lampkin has failed to establish sufficiently that the crew members possessed actual or constructive knowledge of the hazardous condition, which is an element essential to his case upon which he bears the burden of proof at trial.

We conclude that the factual and legal arguments asserted by Lampkin and supported by the record are insufficient to withstand appellees' motion for summary judgment.

AFFIRMED.

---

3. Resolution of this issue is not necessary to our decision today, and we wish to emphasize that we entertain no opinion as to whether the crew's duties signify that the ship owner exercised concurrent control and responsibility over the area of discharge operations.