717 F.Supp. 793 (1988)
Bobby C. BURNEY, Plaintiff,
v.
INTERMARE K.G., K.S. KUHLSCHIFF K.m.b.H. AND COMPANY, a foreign corporation, Defendant.
No. 85-1869-Civ-T-10.
United States District Court, M.D. Florida, Tampa Division.
July 12, 1988.
On Motion to Amend September 16, 1988.
*794 Roger Vaughan, Wagner Cunningham Vaughan McLaughlin, Tampa, Fla., for plaintiff.
Allen von Spiegelfeld, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, Fla., for defendant.

MEMORANDUM DECISION
GAGLIARDI, Senior District Judge.
In this diversity case defendant Intermare K.G., K.S. Kuhlschiff, K.m.b.H. and Co. ("Intermare") moves the court for a directed verdict, a J.N.O.V., a new trial or a remittitur pursuant to Fed.R.Civ.P. 59. The case was tried to a jury which awarded plaintiff Bobby Burney ("Burney") $257,000 in damages for injuries he suffered while working as a longshoreman on the Nectarine, one of Intermare's ships. For the reasons discussed below we deny the motion for a new trial, conditional upon plaintiff consenting to a remittitur in the amount of $82,000.

Background
Plaintiff, a 34 year old longshoreman, was part of a crew unloading bananas from the Nectarine on February 1, 1985. Plaintiff was working on the D deck of the No. 3 hatch. On each deck, the cartons of bananas were stored on gratings. Plaintiff's job that day was to move wheeled conveyor belts onto the deck over the gratings and load the banana boxes onto these belts. As plaintiff was moving the conveyor belt into place the grating on which he was standing collapsed and the conveyor belt fell over and injured his right hand, specifically his thumb and his wrist. Plaintiff also claimed injuries to his back and neck.

Discussion
Defendant first attacks the jury's finding of liability on the grounds that the shipowner had no knowledge of the conditions of the grating when the accident occurred and that the stevedoring company, not the shipowner, was liable once the longshoremen began their unloading operations. Defendant relies on Lampkin v. Liberia Athene Transport Company, Ltd., 823 F.2d 1497 (11th Cir.1987) and Spence v. Mariehamns R/S, 766 F.2d 1504 (11th Cir.1985) to support its argument. An examination of these cases and the testimony presented in the instant case demonstrate *795 that the jury's finding on liability must be left undisturbed.
In Lampkin, plaintiff, a longshoreman, was injured when he slipped on a grease spot which developed after the discharging of the ship had begun, or was at least, unascertainable until the discharging took place. 823 F.2d at 1500-1501. The court began its analysis of plaintiff's claims by stating the three standards of care governing the relationship between the shipowner and the stevedore as set forth in Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981):
First, prior to the onset of cargo operations, the shipowner owes the stevedore and its longshoremen the duty of exercising due care "under the circumstances," which includes having the ship and its equipment in reasonably safe condition and warning the stevedore of hidden dangers that are, or should be, known through the exercise of reasonable care. Scindia, 451 U.S. at 168, 101 S.Ct. at 1622. Second, once cargo operations are under way, the shipowner may be liable if it "actively involves itself in the cargo operations and negligently injures a longshoreman or if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation." Id. Third, also once cargo operations have commenced, and absent contractual, legal or customary provisions to the contrary, the shipowner has no duty "to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore." 451 U.S. at 173, 101 S.Ct. at 1624.
823 F.2d at 1501.
As plaintiff did not contend that the shipowners had violated the first standard of care, the court focused on the second and third standards and held that because the defendant had neither actual or constructive knowledge of the condition causing plaintiff's injury, it could not be held liable. Lampkin, 823 F.2d at 1502-1503.[1]
Lampkin is distinguishable from the case presently under consideration because it involved a condition which came into existence after the discharging of the ship started. Burney's claim relies on the shipowner's violation of the first standard of care articulated in Scindia: the duty to exercise due care prior to the onset of cargo operations, which includes reasonable inspection and repair of the ship, as well as warning the longshoremen of hidden dangers of which it has actual or constructive knowledge. The jury had sufficient evidence to find that the defendant had breached its duty to warn plaintiff of the condition of the gratings on board the Nectarine. Mr. Lloyd Creary, the supervisor of the crew on which plaintiff was working when he was injured, testified at trial that the gratings cannot be seen until the deck is completely discharged and that the boards in the location of plaintiff's accident were "thoroughly rotted out." Transcript at p. 26, line 4. (Hereinafter references to the transcript will be noted as: Tr. page number: line number.) Plaintiff's witness Bobby Hughes, a longshoreman who was at the scene, also testified that the board was rotten and was not visible because it was covered by boxes. (Tr. 44:25; 45:1-9) Mr. Creary also testified to a similar accident which had taken place earlier in the day when a grating on C Deck collapsed beneath a longshoreman. (Tr. 22:3-25; 23:1-10).
For the foregoing reasons, the court finds that the jury's finding on liability was consistent with the law in this circuit and as stated in Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). The court also finds that there was sufficient evidence for the jury to believe that defendant knew or should have known of the dangerous *796 condition of the gratings on board the Nectarine. Goldstein v. Manhattan Industries, Inc., 758 F.2d 1435, 1444 (11th Cir.1985). We now turn our attention to the issue of excessiveness of damages.
In a diversity case the issue of whether the jury's verdict is excessive is determined by reference to state substantive law. If the verdict is excessive under state standards, federal case law then determines whether a new trial or a remittitur should be granted. TDS, Inc. v. Shelby Mutual Ins. Co., 760 F.2d 1520, 1530 n. 8, reh. denied 769 F.2d 1485 (11th Cir. 1985); Quality Foods, Inc. v. U.S. Fire Ins. Co., 715 F.2d 539, 542 n. 2 (11th Cir. 1983); Lowe v. General Motors Corp., 624 F.2d 1373, 1383 (5th Cir.1980).
Under Florida law,
[T]he court should never declare a verdict excessive merely because it is above the amount which the court itself considers the jury should have allowed. The verdict should not be disturbed unless it is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate.
Ashcroft v. Calder Race Course, Inc., 492 So.2d 1309, 1314 (Fla.1986) quoting Lassitter v. International Union of Op. Engineers, 349 So.2d 622 (Fla.1977).
In order to determine whether the jury's award exceeded the "maximum limit of a reasonable range" we must examine plaintiff's claims in light of the evidence presented at trial.
Plaintiff claimed injuries to his thumb, neck and back. The elements of damages charged to the jury for these injuries were past and future medical bills, past and future lost wages, and past and future pain and suffering. Before addressing the proof as to each element, we first examine plaintiff's claimed injuries.
The deposition testimony of Drs. Green, Schlicke, and Boling pertinent to plaintiff's thumb injury was given at trial. While there was some disagreement about both the diagnosis and the prognosis of plaintiff's hand injury among the three doctors, they all concurred on the fact that the injury is permanent. Dr. Boling, an orthopedic surgeon, testified that plaintiff's disability rating is 23% of the thumb, 9% of the hand, 8% of the arm and 6% of the entire person. He also testified that the disability may worsen in the future, may require surgery costing up to $3,000, and that the pain may increase over a long period of time. All of the doctors testified that the hand injury would not prevent the plaintiff from working as a longshoreman. However, Dr. Boling testified that heavy work would aggravate the arthritic condition in the thumb caused by the accident and that plaintiff's right hand was not, and would never be, as strong as his left.
As to plaintiff's back injury, the proof presented did not establish by a preponderance of the evidence that this injury was caused by the accident on board the Nectarine. Plaintiff testified during crossexamination that he had injured his back twice before the accident on the Nectarine, once during prior employment and once during a car accident in 1981. (Tr. 109:9-24.) After the car accident, plaintiff testified that he sued the other motorist's insurance company claiming a permanent back and whiplash injury. (Tr. 109:22-25; 110:1-25; 111:1-3.) Dr. Schlicke, an orthopedic surgeon who first examined plaintiff approximately two months after the accident on the Nectarine, testified that plaintiff never mentioned an injury to his back until June of that year when he complained of tenderness to his shoulder, neck and arm as a result of having helped a friend move. Dr. Schlicke took X-rays of these areas and found them to be normal. (Tr. 11:11-25; 12:1-12.) The only medical testimony relating to plaintiff's back injury was given by Dr. Burns, plaintiff's chiropractor. Dr. Burns testified on direct that plaintiff has permanent injuries to his back, thumb and neck as a result of the accident on the Nectarine. (Tr. 83:13-18.) On cross-examination, Dr. Burns testified that he had seen no X-rays of plaintiff's spine or neck before the accident, (Tr. 87:2-4.) that plaintiff's injury to his spine is commonly known as whiplash, (Tr. 85:1-2) and that plaintiff's *797 misalignment of his spine is a common ailment which can be caused without accident at all. (Tr. 94:1-11.) Based on the foregoing the court finds that the plaintiff did not prove by a preponderance of the evidence that his back and neck injuries were caused by the accident on the Nectarine. As a result of this finding, we hold that an award of $257,000 in damages as a result of plaintiff's thumb injury alone is beyond the maximum range which a reasonable jury could find and is excessive under Florida law. Ashcroft v. Calder Race Course, Inc., 492 So.2d 1309, 1314 (Fla.1986); Bould v. Touchette, 349 So.2d 1181 (Fla.1977). We now turn to the question of what remedies are available under federal law.
A grossly excessive award, or one which shocks the judicial conscience, may indicate that the jury's verdict was swayed by passion or prejudice and necessitate a new trial. Goldstein v. Manhattan Industries, Inc., 758 F.2d 1435, 1447 (11th Cir. 1985). Whether a new trial is required is within the discretion of the district court. Id. There is no indication that the jury in this case was swayed by passion or prejudice. The trial was brief and orderly, with no emotional testimony by the witnesses or superfluous colloquy by the attorneys. Also, as only one basis for liability is alleged, and the jury's finding on that liability is upheld, a new trial would be required only on the issue of damages. "In general, a remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence." 758 F.2d at 1448; Seymour v. Summa Vista Cinema, Inc., 809 F.2d 1385, 1387 (9th Cir.1987); Shu-Tao Lin v. McDonnell Douglas Corp., 742 F.2d 45, 49 (2d Cir.1984); Kazan v. Wolinski, 721 F.2d 911, 914 (3d Cir.1983); Willett v. Western Oceanic, Inc., 117 F.R.D. 379, 382 (E.D.La. 1987). When a remittitur is allowed, the verdict can be reduced only to the maximum amount the jury could have awarded, that is to the outer limit of the proof. Lowe v. General Motors Corp., 624 F.2d 1373, 1383 (5th Cir.1980).
Based on the proof received at trial, the court finds that the maximum amount which a reasonable jury could have awarded to plaintiff is $175,000. This amount excludes any damages claimed as a result of the back injury, as well as plaintiff's claim for future wages. The court finds there was no credible evidence which indicated that plaintiff's thumb injury would prevent him from pursuing his career as a longshoreman. All three of the medical experts who testified to plaintiff's thumb injury stated that this injury did not prevent plaintiff from returning to work. Therefore, excluding future medical bills, future pain and suffering and future wage loss for the back injury the court remits the plaintiff's damages to $175,000 or orders a new trial on the issue of damages alone.

Conclusion
The motion for a new trial is denied, conditioned upon plaintiff consenting to a remittitur in the amount of $82,000. If plaintiff refuses this remittitur, the motion for a new trial is granted on the issue of damages alone.
Plaintiff shall advise the Clerk of the Court of his consent to the remittitur within 20 days from the entry of this order or a new trial on the issue of damages alone will be granted.
So Ordered.

ON MOTION TO AMEND
GAGLIARDI, Senior District Judge.
In this diversity action, plaintiff Bobby C. Burney moves this court to amend its memorandum decision of July 12, 1988, insofar as that decision failed to address the plaintiff's entitlement to interest under 28 U.S.C. § 1961. Entry of judgment in this case has been delayed since the jury rendered its verdict. Plaintiff argues that he is entitled to interest from the date of the jury's verdict; defendant argues that plaintiff is entitled to interest from the date judgment is entered.

*798 Background

On January 26, 1988, the jury rendered its verdict awarding plaintiff Burney $257,000 in damages for injuries he suffered while working as a longshoreman on the Nectarine, one of defendant Intermare's ships. Mistakenly, judgment was not entered on the jury's verdict since defendant Intermare orally moved for a directed verdict, a J.N.O.V., a new trial or a remittitur pursuant to Fed.R.Civ.P. 59. The Court reserved at that time. On July 12, 1988, a memorandum decision was filed granting defendant's motion for a remittitur in the amount of $82,000 and denying defendant's other motions conditional upon plaintiff's consent to the remittitur. Plaintiff timely consented to the remittitur.

Discussion
Plaintiff's motion requires us to apply 28 U.S.C. § 1961(a) in order to determine the proper rate of interest as well as to determine the date from which interest will accrue. The statute provides that "interest shall be calculated from the date of the entry of the judgment ..." 28 U.S.C. § 1961(a). Fed.R.Civ.P. 58 provides that "upon a general verdict of a jury ... the clerk, unless the court otherwise orders, shall forthwith prepare, sign, and enter the judgment without awaiting any direction by the court." In this case, through no fault of the plaintiff, the clerk did not enter judgment. Clearly, the plaintiff was entitled to have the judgment entered in his favor on January 26, 1988.
Defendant urges us to read Section 1961(a) literally, to deny plaintiff interest until the date judgment is entered. The Second and Tenth Circuits seem to favor such a literal reading of Section 1961. See Powers v. New York Central Railroad, 251 F.2d 813 (2d Cir.1958); Millers Nat'l Ins. Co. v. Wichita Flour Mills Co., 257 F.2d 93, 104 (10th Cir.1958). Other circuits, however, have adopted an equitable construction of Section 1961 and hold that, in appropriate cases, interest may accrue from events other than entry of final judgment. See e.g., United States v. Michael Schiavone & Sons, Inc., 450 F.2d 875 (1st Cir.1971) (appeals court reduction of a judgment does not prevent interest from attaching upon the reduced amount from the date of the original judgment); Poleto v. Consolidated Rail Corp., 826 F.2d 1270 (3d Cir.1987) (when court improperly delays entry of judgment, the date of verdict is the date from which Section 1961 interest should run); Louisiana & Arkansas Ry. Co. v. Pratt, 142 F.2d 847 (5th Cir.1944) (interest from the date of verdict may be awarded when, through no fault of plaintiff, appreciable time has elapsed between rendition of the verdict and entry of judgment); Bailey v. Chattem, Inc., 838 F.2d 149 (6th Cir.1988) (Section 1961 must be interpreted broadly to effectuate the purposes of post-judgment interest); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Knudsen, 749 F.2d 496 (8th Cir.1984) (when oversight in clerk's office caused entry of judgment to be delayed some ten months, equity required interest to be calculated from date judgment should have been entered); Turner v. Japan Lines Ltd., 702 F.2d 752 (9th Cir.1983) (adopting the equitable construction of 1961 as enunciated by the Fifth Circuit in Pratt, supra).
We agree that Section 1961 should be equitably construed in favor of a prevailing plaintiff when, as here, a delay in the entry of judgment occurs through no fault of plaintiff. It would be anomalous to read Section 1961 so narrowly that the cost of delay in payment is imposed on a successful plaintiff. Turner v. Japan Lines, Ltd., 702 F.2d 752, 757 (9th Cir.1983). Other courts, in adopting an equitable construction of Section 1961, have held that when a plaintiff's district court judgment is affirmed as to liability but vacated and remanded for a new trial on damages, and when the jury awards damages on remand, interest should run on the amount common to both district court judgments from the date of the first judgment. Bailey v. Chattem, Inc., 838 F.2d 149, 150 (6th Cir. 1988). We see no reason why the result should differ in cases of remittitur. The jury's verdict of January 26, 1988, established defendant's liability; obviously, such a finding of liability is not disturbed by *799 plaintiff's consent to remittitur. In this case, plaintiff agreed to accept an amount lower than the jury's award. Clearly, the lower, final award was part of the jury's original award. Therefore, interest on the remittitur should relate back to the date of the jury's verdict. See 6A Moore's Federal Practice ¶ 58.04[2] n. 16.

Conclusion
An equitable construction of 28 U.S.C. § 1961 requires that interest on plaintiff's reduced award of $175,000 be calculated from January 26, 1988, the date of the original jury verdict. Interest shall be calculated at the applicable federal rate according to the terms of 28 U.S.C. § 1961(a). The clerk will enter judgment for the plaintiff accordingly.
So Ordered.
NOTES
[1] The other case on which defendant relies, Spence v. Mariehamns RIS, 766 F.2d 1504 (11th Cir.1985) is also distinguishable from the present case. Spence involved an injury due to an obvious danger of which the injured longshoreman had received warning from his own supervisor. 766 F.2d at 1507.