Daniel F. DAIGLE, Plaintiff-Appellee,

v.

POINT LANDING, INC., et al., Defendants-Appellants.

No. 77-2724.

United States Court of Appeals, Fifth Circuit.

May 8, 1980.

Rehearing Denied June 6, 1980.

---

A. Gordon Grant, Jr., Stanley McDermott, III, New Orleans, La., for defendants-appellants.

Leon C. Vial, III, Hahnville, La., for plaintiff-appellee.

Before MORGAN, RONEY and GARZA, Circuit Judges.

RONEY, Circuit Judge:

In this rather unusual maritime personal injury case, we reverse the trial court's decision for the plaintiff. In a bifurcated trial on the issue of liability alone, the court made findings of fact which are virtually uncontested on appeal. We therefore set forth in full the findings of fact of the trial court and the conclusion of law which fixed liability on the defendant, and discuss why this conclusion of law was wrong under the circumstances.

### Trial Court's Findings of Fact

1. On September 19, 1972, the towboat HARRY COLLINS, owned and operated by defendant Point Landing, Inc., brought a barge to a chemical loading dock owned by the Monsanto Company and located on the Mississippi River at Luling, Louisiana.

2. While in the process of maneuvering the barge into position at the dock, one of the propellers of the HARRY COLLINS became entangled in a barge haul cable which was attached to winches located on the dock.

3. The barge haul cable ran along the outboard edge of the dock and was suspended between two electrically operated winches, located respectively near the upstream and downstream ends of the dock. Monsanto normally used this cable to position vessels alongside the dock for loading and discharging.

4. The HARRY COLLINS attempted to maneuver free from the cable with assistance from the Mansanto personnel on the dock. Initially, the downstream winch was released to create slack in the cable and to afford the vessel maneuvering room. This was ineffective.

5. Acting on a request by the Master of the HARRY COLLINS for further assistance, plaintiff, a shift foreman employed by Mansanto, went to the dock to take charge of the dockside efforts to free the vessel.

6. Plaintiff was accompanied to the dock by third party defendant Charles Gillen who was the night superintendent of the Monsanto plant. Gillen was present as an observer and did not participate in the activities on the dock.

7. Third party defendant Don Cayard was the plant superintendent on September 19, 1972, and was not present on the Monsanto dock or at the Monsanto plant on the night of the accident.

8. When the plaintiff arrived at the dock, he first attempted to free the vessel by releasing the downstream winch, which was in proper working condition, thereby providing additional slack and more room for the vessel to maneuver. After this action proved unsuccessful, plaintiff proceeded to the upstream winch. He observed that this winch was not in proper working

condition due to the absence of the brake mechanism which had been removed for repairs. A large Stillson wrench was attached to the drive shaft between the winch motor and the winch drum and functioned as a braking device.

9. Plaintiff removed the wrench and allowed cable to run from the upstream winch. He then stopped the drum from rotating by applying pressure on the winch coupling with his foot and resecured the wrench to the motor shaft.

10. Plaintiff determined that still more slack was needed and after notifying the Master of the HARRY COLLINS of his intentions, he again removed the wrench to allow more cable to roll.

11. After a short time plaintiff attempted to reposition the wrench as he previously had done. However, as he did this, the HARRY COLLINS applied power putting an immediate strain on the cable and causing the wrench to whip around and to strike plaintiff.

12. No warning was given to plaintiff by the Master of the HARRY COLLINS that sudden power would be applied.

13. The captain of the HARRY COLLINS was asleep and was not aroused to assist in the operations.

*Trial Court's Contested Conclusion of Law*

The Master of the HARRY COLLINS was negligent in applying force to the cable without prior warning to plaintiff and that negligence was the proximate cause of plaintiff's injury.

*Discussion*

The trial court's conclusion of law rests on a premise which requires the existence of facts establishing a duty to warn. The findings of fact rendered by the trial court do not, however, include facts which establish such a duty.

■ In analyzing a maritime tort case, we rely on general principles of negligence law. *S. C. Loveland, Inc. v. East West Towing, Inc.*, 608 F.2d 160, 165 (5th Cir. 1979). The plaintiff is owed a duty of ordinary care. A defendant's failure to warn the plaintiff does not breach that duty, however, unless the resultant harm is reasonably foreseeable. Liability for a failure to warn thus arises from foreseeability, or the knowledge that particular conduct will create danger. As stated in 57 Am. Jur.2d *Negligence* § 72 (1971), at 423:

> [T]he care which must be exercised in any particular situation is in proportion to the actor's knowledge, actual or imputed, of the danger to another in the act to be performed. The degree of care necessary to constitute the ordinary care required of a person upon any particular occasion is measured by reference to the circumstances of danger and risk known to such person at the time. Conduct which will be considered extremely careful under one condition of knowledge, and one state of circumstances, may be grossly negligent with different knowledge and in changed circumstances.

[footnotes omitted].

■ A determination of the reasonableness of the HARRY COLLINS' master's failure to warn the plaintiff requires an examination of all the circumstances surrounding the injury. *Gay v. Ocean Transport & Trading, Ltd.*, 546 F.2d 1233, 1242, n.20 (5th Cir. 1977).

■ Neither the record nor the findings of fact show the master of the HARRY COLLINS knew or had reason to suspect that the vessel's maneuvering in the river endangered the plaintiff's safety. Movement of the vessel jeopardized Daigle's safety only because Daigle attempted to brake the defective upstream winch with a Stillson wrench. The testimony of the Monsanto personnel on the dock at the time of the accident establishes that neither Daigle nor any other Monsanto employee informed the master or crew of the HARRY COLLINS that the plaintiff was operating a defective winch without a protective cover by means of a wrench used as a makeshift braking device. Nor did anyone, including Daigle, instruct the master or crew to cease maneuvering the vessel while Daigle manipulated the winch.

Daigle's brief asserts as a basis for the duty to warn that the master "could plainly see the situation on the dock, particularly plaintiff's manipulations with the winch, since he was very close to the dock and it was well lighted." Neither the record nor the findings of fact rendered by the trial court supports the inference which plaintiff suggests. Daigle's testimony as to visibility demonstrates his belief that his actions could be seen, and might be relevant to the reasonableness of his own actions, but is not sufficient to establish facts placing a duty to warn on the master of the towboat.

Neither can the vessel's maneuvering in the river alone impose a duty to warn. By affording the vessel slack in the barge haul cable, Daigle's purpose was to enable the vessel to maneuver free from its entangled position. Daigle slackened the cable in order to facilitate movement of the vessel. By maneuvering, the master complied with the apparent intentions of the dock personnel.

#### Decision

The master of the HARRY COLLINS had no reason to suspect that maneuvering might endanger the plaintiff. Lacking any such reason, he was not legally obliged to warn Daigle of the vessel's movements. The trial court's conclusion that the failure to warn constitutes negligence is accordingly erroneous as a matter of law.

Notwithstanding the trial court's denomination of its determination of negligence as a conclusion of law, Daigle asserts that an admiralty court's resolution of a negligence issue must be treated as a finding of fact, binding on this Court unless clearly erroneous. See *Marcona Corp. v. Oil Screw Shifty III*, 615 F.2d 206, at 208 (5th Cir. 1980); *S. C. Loveland, Inc. v. East West Towing, Inc.*, 608 F.2d at 166. Whether or not the decision that the master of the HARRY COLLINS owed a duty to warn Daigle of the movements of the vessel is reviewable as a conclusion of law or a finding of fact is not controlling. If reviewable as a conclusion of law, the district court erred. If reviewable as a finding of fact, the district court was clearly erroneous in deciding that the master of the HARRY COLLINS was negligent.

Reversing the judgment of the trial court on this ground makes it unnecessary to rule on the other points concerning contributory negligence, the court's failure to assess proportionate fault against plaintiff's employer, and the concededly improper judgment *in rem* against the vessel, because seizure had never been effected.

REVERSED.