[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-11204

_____

BRIZO, LLC, AS OWNER OF THE M/V HONEY, 2007
163 FOOT TWIN ENGINE YACHT (ON 739735),

Plaintiff-Counter Defendant-
Third Party Plaintiff-Appellee,

versus

URIELI RAMIREZ CARBAJAL,
ROSALIA GORGONIO IXBA,

Defendants-Appellants,

UNKNOWN CLAIMANTS,

Claimant,

2                    Opinion of the Court                    20-11204

OLD PORT COVE HOLDINGS, INC.,

                              Claimant - Counter Claimant -

                                   Third Party Defendant,

EASTERN MARINE SERVICES, INC.,
ZACHARY STAGGS,

                         Counter Claimants-Third Party Defendants.

                    _____

               Appeal from the United States District Court
                  for the Southern District of Florida
                  D.C. Docket No. 9:18-cv-80855-RLR

                    _____

Before BRANCH, GRANT, and JULIE CARNES, Circuit Judges.

JULIE CARNES, Circuit Judge:

        This case involves a horrible accident that led to the death
of a diver, Luis Gorgonio Ixba.  While cleaning the hull of the M/V
Honey, which was a vessel owned by Brizo, LLC, Ixba was killed
when a crew member activated a bow thruster.  Urieli Ramirez
Carbajal and Rosalia Gorgonio Ixba, the plaintiffs in this action, are
the personal representatives of Ixba's estate.

Ixba's estate[1] filed a wrongful death lawsuit in Florida state court alleging, among other things, negligence against Brizo and the crew of the M/V Honey.  Pursuant to the Limitation of Liability Act[2] and Supplemental Rule 5 for exoneration of liability, Brizo then filed a complaint in admiralty in the United States District Court for the Southern District of Florida.  In response to that complaint, Ixba filed a Notice of Claims against Brizo, in which he alleged Brizo's negligence.

Following discovery, the district court granted Brizo summary judgment.  The court found Ixba solely at fault for the accident because he never notified the crew that he was present before he began his dive.  In addition, the court faulted Ixba for having failed to employ a dive flag, as required by safety regulations.  Ixba appeals.  After careful review and with the benefit of oral argument, we affirm.

I.    BACKGROUND

A.    Factual Background

The pertinent facts of this case, as reflected in the district court's order, are undisputed.  Brizo owns the M/V Honey, a 164-foot yacht.  Brizo contracted with Eastern Marine Services, a

---

[1]  The district court recognized that the Claimant in this case is the estate of Mr. Ixba.  However, in the interest of brevity and clarity, the court referred to the Claimant as "Ixba."  In the interest of consistency, we will do the same.

[2]  46 U.S.C. §§ 30501–30512.

commercial diver company, to clean its hull.  On June 21, 2017, Eastern Marine sent an e-mail to Captain Smart of the M/V Honey, stating that the vessel's next hull cleaning "was coming up approximately 6/26 [at] 7:00 P.M.," which was five days later.  The email, however, informed Captain Smart that this was just an estimated date, subject to change as:  "our schedules constantly change, so the date and time is at best a rough approximation, thanks for understanding the dynamics of our world."  There was no further communication from Eastern Marine regarding the upcoming cleaning and Captain Smart did not mention to his crew that the hull was due to be cleaned in the near future.

Eastern Marine selected Ixba to be the diver to clean Brizo's vessel.  On June 27th, which was one day after the approximate date Eastern Marine had projected to Captain Smart, Ixba arrived to clean the yacht.  At the time of Ixba's arrival, all crew members were inside the vessel.  Even though Eastern Marine divers customarily notify a crew member when they are about to commence diving operations, sadly Ixba never did so.  Instead, he approached the vessel without identifying himself or notifying the crew members on the vessel that he had arrived and was about to begin his dive.  Because he then immediately entered the water without ever announcing his presence, no member of the crew was even aware that he was under the boat.  Adding to the lack of precautions taken by Ixba, he also failed to mark his presence in the water with a diver flag, as required by regulation.

Unaware of Ixba's presence, Captain Smart had disembarked the vessel after Ixba had begun his dive, leaving Chief Mate Marks in charge.  Unaware that anyone was diving under his boat and needing to move the boat closer to the dock to load some jet skis, Chief Mate Marks began the process of activating a bow thruster on the yacht.  Before activating the thruster, Marks walked around the vessel and looked into the water—he saw no bubbles. Seeing no danger, Marks activated the thruster, tragically killing Ixba.

## B.     The District Court's Order Granting Brizo Summary Judgment

Brizo moved for summary judgment on the question of its liability.  The district court concluded that because Ixba was a "covered worker" within the Longshore and Harbor Workers Compensation Act, 33 U.S.C. § 901 ("Longshore Act"), his claim for negligence against Brizo is governed by that Act.  In so ruling, the court rejected Ixba's contention that he was not covered by the statute. The court acknowledged that an exemption from the Longshore Act for work on recreational vessels potentially exists, but noted that "[t]he exemption only applies when the worker or accident at issue is covered by a state worker's compensation law. 33 U.S.C. § 902(3)(F)."  The court stated that Ixba "cites no evidence" that state worker's compensation provisions apply to the accident in this case.  Accordingly, the court concluded that Ixba was subject to the Longshore Act.

Having found that that the Longshore Act covered this accident, the court considered the three duties a vessel owes a contract harbor worker under that statute, as set out in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981): (1) a general duty to "turnover" a vessel in a safe manner to workers, (2) a duty to exercise reasonable care in the areas of the ship under active control of the vessel, and (3) a duty to intervene. The district court reasoned that "the premise of all of the *Scindia* duties is that the vessel crew *knows* that workers are present to work on the vessel." The court found that Brizo owed no duty to Ixba because "[n]ot only did Ixba fail to notify anyone on the vessel of his presence or work operations, he submerged himself under the water—he became invisible to the crew." Accordingly, the court concluded that Brizo did not violate any duty owed Ixba, and it granted Brizo summary judgment.

## II.    DISCUSSION

In arguing that the district court erred in granting summary judgment to Brizo, Ixba contends that the Longshore Act does not apply to the present case and that, instead, his negligence claims should be assessed under the general duty of reasonable care that is applicable in maritime tort cases, not the limited *Scindia* duties owed when the Longshore Act applies.

"We review a district court's grant of summary judgment *de novo*, viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party." *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014). Summary

judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is improper, however, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A.    The District Court Properly Granted Brizo Summary Judgment

The district court concluded that the Longshore Act governs Ixba's accident and that Brizo is entitled to summary judgment because it did not violate any duty owed Ixba under that statute. The Longshore Act "establishes a comprehensive federal workers' compensation program that provides longshoremen and their families with medical, disability, and survivor benefits for work-related injuries and death." *Troutman v. Seaboard Atl. Ltd.*, 958 F.3d 1143, 1146 (11th Cir. 2020), quoting *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 96 (1994). Further, and of pertinence in this case, "[t]he statute was amended in 1972 to permit a longshoreman to 'seek damages in a third-party negligence action against the owner of the vessel on which he was injured.'" *Id.*, quoting *Howlett*, 512 U.S. at 96; *see* Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, Pub. L. No. 92-576, § 18(a), 86 Stat. 1251, 1263 (codified as amended at 33 U.S.C. § 905(b)).

Ixba contends that his negligence claim is not governed by the Longshore Act, with the narrow *Scindia* duties it imposes on vessels. Rather, Ixba argues his claim should be assessed in

accordance with general maritime law, which imposes a general duty of reasonable care.  We first address the applicability of the Longshore Act.

1.    The Longshore Act Governs Ixba's Negligence Claim

Section 905(b) of the Longshore Act provides a non-seaman maritime worker with a potential negligence claim against a vessel when he is injured while performing work on that vessel.  33 U.S.C. § 905(b); *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 818 (2001).  "A harbor worker whose injury is caused by the negligence of a vessel, or such harbor worker's personal representative, may bring an action against the vessel under 33 U.S.C. Section 905(b)."  *Roach v. M/V Aqua Grace*, 857 F.2d 1575, 1581 (11th Cir. 1988).  The remedy provided by the Act is "exclusive of all other remedies against the vessel."  33 U.S.C. § 905(b) (emphasis added).

For the Longshore Act to apply, a worker ordinarily must satisfy both a "situs" requirement and a "status" requirement.  *Dir., OWCP v. Perini N. River Assocs.*, 459 U.S. 297, 299 (1983).  The "situs" test requires that the worker's injury occur "upon the navigable waters of the United States."  *Id.*; 33 U.S.C. § 903(a).  It is undisputed that Ixba was injured on "navigable waters" and that the situs requirement is therefore satisfied.

To satisfy the "status" requirement, the worker "must be 'engaged in maritime employment' within the meaning of § 2(3) of

the Act." *Id.* The Longshore Act defines a covered employee as "any person engaged in maritime employment, including . . . any harbor-worker including a ship repairman, shipbuilder, and ship-breaker." 33 U.S.C. § 902(3). We have held that a diver commissioned to scrape barnacles from the hull of a docked vessel falls within this definition. *Roach*, 857 F.2d at 1579. Ixba does not dispute that he performed the type of work required for Longshore Act coverage to apply, meaning that the status requirement would be satisfied here absent an applicable exception.

Ixba argues that such an exception exists, as the Longshore Act excludes "individuals employed to repair any recreational vessel." 33 U.S.C. § 902(3)(F). Brizo does not dispute that the M/V Honey is a recreational vessel. However, Brizo notes that the exclusion applies to employees working on recreational vessels only "if [they] are subject to coverage under a State workers' compensation law." 33 U.S.C. § 902(3)(F). Brizo argues that because Ixba failed to demonstrate coverage of his claim under Florida's workers' compensation law, the recreational vessel exclusion does not apply and the Longshore Act continues to govern his claim. We agree.

The record below is devoid of any evidence or argument from Ixba that his claim is covered by state workers' compensation law. Moreover, Ixba's employer, Eastern Marine Services, stated in a sworn interrogatory response that Ixba "was a Truly Self-Employed Independent Contractor with no Controlling Employer." Florida law excludes "independent contractor[s] who [are] not

engaged in the construction industry" from the definition of "employee" in its workers' compensation law. Fla. Stat. § 440.02(15)(1). Nevertheless, Ixba did not refute—before the district court or here on appeal—Eastern Marine's sworn statement that he was an independent contractor.[3]  As such, this record does not permit a conclusion that Ixba's claim is covered by Florida workers' compensation law.  Accordingly, the district court did not err in determining that the recreational vessel exclusion in the Longshore Act is inapplicable.  Therefore, Ixba's claim is governed by the Longshore Act.

### 2.    Brizo Did Not Breach any Duty Owed to Ixba under the Longshore Act

Ixba failed to demonstrate any genuine issues of material fact regarding Brizo's liability for negligence under 33 U.S.C. § 905(b).  A shipowner owes a harbor worker three duties under *Scindia*:  (1) a duty to turn over the ship to the worker in a safe

---

[3] Despite the express statutory requirement for the recreational vessel exception to apply, Ixba failed to address below in his brief opposing summary judgment the applicability of state workers' compensation coverage when arguing that the exception applied, declined to move for a sur-reply when the importance of the issue became obvious from Brizo's reply supporting summary judgment, and failed to file a motion for reconsideration or alter/amend the judgment to address the issue.  On appeal, Ixba merely makes the bald assertion that the Florida Workers Compensation Act "covers accidental injury or death arising out of work performed on recreational vessels in Florida," but fails to attempt to refute the proffered evidence or to address arguments that he was an independent contractor and, therefore, not subject to state workers' compensation coverage.

manner, after which duties arise to (2) exercise reasonable care in the areas of the ship under the active control of the vessel and (3) intervene in certain circumstances upon awareness of an actual danger to the worker. *Troutman.*, 958 F.3d at 1146–47; *Howlett*, 512 U.S. at 9; *see Scindia*, 451 U.S. at 167–78. While often applied in the context of stevedoring operations involving injury of longshoremen, the *Scindia* duties also apply when harbor workers perform repairs underwater or on board the ship. *Roach*, 857 F.2d at 1581–82, citing *Hill v. Texaco, Inc.*, 674 F.2d 447, 450–51 (5th Cir.1982) and *Casaceli v. Martech International, Inc.*, 774 F.2d 1322 (5th Cir.1985)).

The turnover duty requires a vessel to "'exercise ordinary care under the circumstances' to turn over the ship and its equipment and appliances 'in such condition that an expert and experienced stevedoring contractor, mindful of the dangers he should reasonably expect to encounter, arising from the hazards of the ship's service or otherwise, will be able by the exercise of ordinary care' to carry on cargo operations 'with reasonable safety to persons and property.'" *Howlett* 512 U.S. at 98, quoting *Fed. Marine Terminals, Inc. v. Burnside Shipping Co.*, 394 U.S. 404, 416–417, n.18 (1969). The active-control duty requires a shipowner to exercise reasonable care to prevent injuries to harbor workers in areas that are under the shipowner's active control. *Id.* The duty to intervene requires a shipowner to intervene if "during [contractor] operations, the shipowner becomes aware that the ship or its gear poses a danger to the [worker] and that the [contractor] is failing,

unreasonably, to protect the [worker]." *Clark v. Bothelho Shipping Corp.*, 784 F.2d 1563, 1565 (11th Cir. 1986).

The district court found that the *Scindia* duties do not apply to this case for two reasons. First, the court stated "the second and third *Scindia* duties [active control and intervention] only arise after the first duty (safe turnover) is triggered by a vessel being turned over to workers, but no turnover occurred in this case." Second, the district court reasoned that "the premise of all of the *Scindia* duties is that the vessel crew knows that workers are present to work on the vessel." As such, the court concluded that Brizo did not owe any of these duties to Ixba because Ixba "fail[ed] to notify anyone on the vessel of his presence or work operations," submerged himself under the water, and became invisible to the crew.

On appeal, Ixba argues that Brizo violated the second *Scindia* duty, i.e. the duty to exercise reasonable care to prevent injuries to workers in areas that are under the shipowner's active control. Ixba contends that the email sent from Eastern Marine to Captain Smart six days before the accident providing a rough approximation when hull cleaning might occur triggered the vessel's active control duty which was breached when the crew activated the bow thruster. We disagree.

As an initial matter, Ixba does not dispute that he began work and entered the water without notifying the crew of his presence. Nor does Ixba dispute that the crew never turned over any portion of the vessel to him. Ixba cites no authority, and we are aware of none, supporting the notion that the active control duty

may be triggered when a worker begins work without notifying the crew of his presence and denies the vessel an opportunity to satisfy its turnover duty.  To so hold would effectively impose a general duty on vessels to exercise reasonable care to protect harbor workers in contravention of the statutory scheme and binding precedent.  *Scindia*, 451 U.S. at 172; *Howlett*, 512 U.S. at 97 (explaining the fundamental changes effected by the 1972 amendment to the Act, i.e. shifting responsibility for preventing injuries away from vessels and onto employers, and noting that "[s]ubjecting vessels to suit for injuries that could be anticipated and prevented by a competent stevedore would threaten to upset the balance Congress was careful to strike in enacting the 1972 amendments.").  Indeed, the shipowner is entitled to rely on the harbor worker's employer to supervise worker operations and ensure employee safety. *Troutman*, 958 F.3d at 1147 ("Generally, shipowners have 'a rightful expectation' that a stevedoring company will 'perform [its] task properly without supervision by the ship' and that the stevedore will 'avoid exposing the longshoremen to unreasonable hazards.'" (quoting *Scindia*, 451 U.S. at 170)).

Rather than being burdened with a general duty to exercise reasonable care, vessels must fulfill only the limited duties outlined in *Scindia*.  The Supreme Court describes these duties as operating in a temporal and sequential fashion.  For instance, *Howlett* describes the turnover duty as "relat[ing] to the condition of the ship *upon the commencement of stevedoring operations.*"  *Howlett*, 512 U.S. at 98 (emphasis added).  *Howlett* further describes the

second duty, the "active control" duty allegedly breached here, as being "*applicable once stevedoring operations have begun,*" suggesting that the vessel was already turned over to the workers and excluding liability for alleged improper conduct occurring before operations have begun. *Id.* (emphasis added); *Roach*, 857 F.2d at 1581–82 (describing the turnover duty as the "*initial* duty" that must be satisfied "*[b]efore* a stevedore begins work" (emphasis added)). Here, Ixba commenced his work without notifying the crew of his presence, depriving the crew of an opportunity to turn over the vessel in a condition safe for diving operations, such as by locking-out and tagging-out the vessel's motors. Having prevented the crew from satisfying its initial duty to turn over the vessel in a safe condition, Ixba cannot rightfully claim breach of the subsequent active control duty, which necessarily depends on the vessel's knowledge that worker operations have begun. *See Scindia*, 451 U.S. at 167 (A vessel violates the active control duty if it "actively involves itself in the cargo operations and negligently injures a longshoreman.").

In essence, Ixba argues that because Brizo had been notified that the diver would arrive at some time in the next few days to clean the hull, Brizo should be deemed to have been on perpetual constructive notice of the diver's arrival—whenever that may have been and even if the diver never announced his arrival—and thus to have turned the boat over to the diver at any point that the individual chose to arrive—no matter that the diver took no steps to announce his presence and that, as a result, the crew had absolutely

no knowledge that he was there.  In support of his argument, Ixba relies on Eastern Marine's email, which he says provided sufficient notice to trigger the active control duty.  This argument does not persuade us.  First, the email is too indefinite to trigger that duty.  Sent on June 21, the email merely stated that the vessel's next hull cleaning "was coming up approximately 6/26 [at] 7:00 P.M.," five days later.  Moreover, the email characterized that date and time as "at best a rough approximation" and noted that diver "schedules constantly change."  Absent a follow-up from Eastern Marine co-ordinating a more precise date and time, which never came, the email sent Captain Smart provided little more than an affirmation that Eastern Marine planned to clean the hull of the M/V Honey sometime in the future.

Second, even if the email could be viewed as triggering a duty owed to Ixba at the date and time specified, Ixba did not show up at the appointed time.  The incident occurred on June 27, a day after the scheduled cleaning.  Ixba cites no authority supporting the proposition that an indefinite email like that sent by Eastern Marine to Captain Smart could trigger any of the *Scindia* duties, much less require the vessel to prepare for the diver's arrival (e.g., by locking and tagging out its motors) and maintain the vessel in a prolonged disabled state for an unknown period of time in order to accommo-date a diver who might or might not arrive at any time and who could not be expected to take the simple, common sense step of letting the crew know he was there.

In rebuttal of Ixba's implicit argument that he was not required to give notice of his presence, the record reflects that Eastern Marine's divers customarily notified a member of the crew of their presence and discussed what needed to be done before commencing diving operations. Thus, Captain Smart and the crew had a reasonable expectation that Ixba would afford them an opportunity to make the vessel safe for his diving operations upon his arrival, especially as he had not arrived at the designated date and time. Indeed, the vessel and its crew had a "rightful expectation" that Ixba would not surreptitiously begin work and knowingly confront an unreasonably dangerous situation that could easily have been avoided. *Troutman*, 958 F.3d at 1147; *see Roach*, 857 F.2d at 1582–83 (finding "the district court correctly ruled that as a matter of law, knowledge of the underwater condition of the slip and the risks inherent in those conditions are properly attributable to the divers performing a cleaning operation, and that the shipowner therefore had no duty to warn."). Accordingly, even if the active control duty could be deemed to apply in some circumstances in which the vessel had not been formally turned over to a harbor worker, no reasonable jury could conclude that Eastern Marine's vague and indefinite email triggered such a duty in this instance.

For all these reasons, the district court correctly concluded that Brizo did not breach any *Scindia* duty owed to Ixba and we affirm the district court's grant of summary judgment for Brizo.

B.    Alternatively, No Jury Could Reasonably Conclude under General Maritime Law that Brizo Negligently Caused the Accident

Even if the Longshore Act did not apply, meaning that general negligence principles apply, we conclude that Ixba raised no triable issues of fact regarding the vessel's negligence under maritime law. "In analyzing a maritime tort case, we rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012), quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980). To plead negligence, a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm. *Id.* "[T]he benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances." *Id.*, quoting *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). A plaintiff "cannot succeed on a maritime negligence claim against a shipowner unless that shipowner had actual or constructive notice of a risk-creating condition." *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1167 (11th Cir. 2021), citing *Keefe*, 867 F.2d at 1322.

For the same reasons that we find no violation of the *Scindia* duties, we likewise conclude that the vessel lacked actual or constructive notice of a risk-creating condition. Brizo had no notice of any particular day that a diver would perform the hull cleaning and certainly no reason to believe that the diver, about to place himself

in harm's way under the hull of the ship, would elect not to alert the crew prior to performing this hazardous assignment. No reasonable jury could find a breach of the vessel's duty to exercise reasonable care under these circumstances. Thus, albeit with great sympathy and sadness for Ixba and his family at the tragic events leading to his death, we agree with the district court that Brizo is not liable.

## III.    CONCLUSION

For the reasons explained above, we **AFFIRM** the decision of the district court granting Brizo summary judgment.