[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 24-10957

Non-Argument Calendar

————————————————

LEONARD ROBERTS,

Plaintiff-Appellant,

*versus*

PHILADELPHIA EXPRESS TRUST,
HAPAG-LLOYD USA, LLC,
MARINE TRANSPORT MANAGEMENT,
JOHN DOE,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:20-cv-00236-RSB-CLR

_____

Before NEWSOM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Leonard Roberts, a longshoreman, sued Philadelphia Express Trust, Hapag-Lloyd USA, LLC, and Marine Transport Management, collectively, the operators of a vessel, because he tested positive for COVID-19. Those operators failed to notify him that a crew member tested positive for COVID-19 before he boarded the vessel. The district court granted the vessel operators' motion for summary judgment because it determined that Roberts's factual allegations fell short in establishing that the vessel operators caused his injury. Roberts appeals and makes two arguments. First, he contends that a jury could find that the operators breached their statutory duty by failing to turn over a safe vessel. Second, he argues that a jury could find that their breach of the turnover duty caused his injury. Because his second argument fails—he failed to establish that any such breach caused his injury—we need not address his first argument, and we affirm the district court.

**I.**

For purposes of this appeal, we view the facts in the light most favorable to Roberts, against whom the district court granted

summary judgment. *See Troutman v. Seaboard Atl., Ltd.*, 958 F.3d 1143, 1146 (11th Cir. 2020).

A crew member of the Philadelphia Express tested positive for COVID-19 in July 2020. That crew member "didn't say anything to anyone while developing symptoms and making . . . coffee daily" for the others aboard the vessel.

Once the infected individual revealed his symptoms, a crew member sent an email stating that "the vessel has been exposed to Covid 19." The email also stated that "[w]e had a crewmember test positive yesterday, but we have been taking extra precautions to prevent the spread of the virus." Regarding next steps, the crew member noted in the email that three individuals had been experiencing symptoms, and, as a result, had "been confined to their quarters and instructed not to come out until notified to do so." The crew member also arranged for the infected individual to be tested for COVID-19 in Jacksonville, Florida, once the vessel docked in Savannah, Georgia.

Two hours after the infected crew member left the vessel for testing, Roberts boarded the vessel. At that time, he was unaware of the infected crew member. He also never saw a quarantine flag to alert longshoremen of an infection on the vessel. Other ships in the area display these flags after a crew member tests positive for COVID-19.

Roberts had limited interactions with the vessel's crew members. As he boarded the ship, which took about twenty seconds, he walked past crew members. And crew members walked

by him as he was handling cargo, sometimes nearer than ten to twenty feet. As Roberts performed his lashing job, he stayed on the vessel's deck and never went inside the vessel.

Roberts's labor union found out about the infected crew member. In response, the union made all members test for COVID-19, requiring a negative result to return to work. Roberts took a COVID-19 test and received a positive result a day later, causing him to miss work and lose wages.

During the time Roberts had COVID-19, his live-in girlfriend also had the virus. He was not sure whether she gave him the virus, or if he gave the virus to her. And he stated that he could not trace the source of his illness to the vessel. As to the remaining crew members aboard the vessel, they tested negative for COVID-19 at the next port.

Roberts sued the vessel operators in Georgia state court, but the operators removed the suit to federal court. Then they moved for summary judgment. In support of this motion, they submitted Dr. Adam Blass's expert witness report and deposition. According to Dr. Blass, significant exposure to COVID-19 occurs when an infected individual encounters another person for fifteen minutes, standing about six feet apart.

The district court granted the vessel operators' motion for summary judgment. The court determined that no genuine issue of material fact existed as to whether the vessel operators caused Roberts's injury. Because the district court determined that Roberts failed to show that an issue of material fact existed as to

causation, the court did not address whether the vessel operators violated their turnover duty. This appeal followed.

## II.

We review a district court's grant of summary judgment *de novo*. *Willis v. Royal Caribbean Cruises, Ltd.*, 77 F.4th 1332, 1335 (11th Cir. 2023). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And an issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b), provides longshoremen a "statutory negligence action." *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 165 (1981). Under the Act, "[i]n the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party." 33 U.S.C. § 905(b).

Because section 905(b) does "not specify the acts or omissions of the vessel that would constitute negligence[,]" the Supreme Court observed that "[m]uch was left to be resolved through the 'application of accepted principles of tort law and the

ordinary process of litigation.'" *Scindia*, 451 U.S. at 166 (quoting S. Rep. No. 92–1125, at 11 (1972)). And based on accepted principles of tort law, a plaintiff seeking to establish negligence "must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm.'" *Willis*, 77 F.4th at 1336 (citing *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012)).

### III.

Roberts makes two arguments on appeal. First, he argues that a jury could find that the vessel operators breached their duty to turn over a safe vessel. Second, he argues that a jury could find that the breach of that duty caused his injury. Because his causation argument fails, and negligence requires both breach and causation, we need not address his first argument.

The Act requires that the injury be "caused" by the vessel's negligence. 33 U.S.C. § 905(b). And causation requires "a plaintiff to show that 'the breach actually and proximately caused the plaintiff's injury.'" *Willis*, 77 F.4th at 1336 (quoting *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1167–68 (11th Cir. 2021)). To determine causation, we look to general tort law principles. *See Scindia*, 451 U.S. at 166. Roberts's injury, stemming from the transmission of a virus, is not observable by a lay person. In other contexts, we have determined that lay-person testimony to establish causation of a non-observable medical injury is often insufficient. *Willis*, 77 F.4th at 1338.

Roberts argues that he need not produce medical expert testimony to establish causation. The district court disagreed and considered the testimony from the vessel operators' expert witness, Dr. Blass, unrebutted. The district court's analysis relies on our precedent from *Willis*, which "recognize[d] in the maritime context that non-readily observable injuries require medical expert testimony to prove causation." *Id.* at 1338. To reach that determination, this Court surveyed various state law causation requirements and considered whether those requirements frustrated the national interest in uniformity of federal maritime law. *Id.* at 1337–38. After this analysis in *Willis*, we adopted the medical expert testimony requirement in the maritime context. But Roberts's cause of action arises under the Act—not "our judicially created body of maritime law." *Id.* at 1336.

In our published caselaw, we have not extended the requirement of medical testimony to section 905(b). And we need not do so to resolve this appeal. Even if the Act does not require medical testimony to establish causation, Roberts's factual allegations fail to create a genuine dispute of material fact.

The vessel operators submitted evidence that not a single crew member, of whom Roberts could have encountered aboard the ship, tested positive for COVID-19. Roberts relies on emails, which suggested that three crew members exhibited COVID-19 symptoms, to support his allegation that a crew member transmitted the virus to him. But because those emails did not establish that a crew member tested positive, and, at the next port stop, no one

else tested positive, we cannot say a genuine dispute of material fact exists as to the cause of Roberts's injury. Roberts would require a factfinder to presume that because he tested positive after boarding the vessel, someone on the vessel gave him the virus. But Roberts does not dispute that he could have come into contact with the virus elsewhere; for example, his live-in girlfriend contracted COVID-19 at the same time he suffered from the virus.

Without facts pointing us to a potential crew member from whom Roberts contacted COVID-19, his argument essentially asks us to allow a factfinder to base its factual inferences on speculation. But a jury cannot make inferences based on "speculation and conjecture." *Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985). The record fails to identify or provide any facts from which a jury could make a reasonable inference as to when and how Roberts contracted COVID-19. Reviewing the evidence in the light most favorable to Roberts, we cannot say a reasonable jury would find that the vessel operators caused Roberts's injury. Without a genuine issue of material fact, summary judgment is appropriate. *Anderson*, 477 U.S. at 248.

## IV.

We **AFFIRM** the district court's grant of the vessel operators' motion for summary judgment.